| | |
|---|---|
| U. S. District Court for the District of Colorado<br><br>Court Address:<br>901 9th St., Room A105<br>Denver, CO 80294<br>Tel.: (303) 844-3433 | **FILED**<br>**UNITED STATES DISTRICT COURT**<br>**DENVER, COLORADO**<br>9:58 am, Apr 22, 2021<br>**JEFFREY P. COLWELL, CLERK** |
| Plaintiff(s)/Petitioner(s): **ANDREW THOMAS SCOTT**<br><br>v.<br><br>Defendant(s)/Respondent(s): **THE STATE OF COLORADO** | ▲ **COURT USE ONLY** ▲ |
| Attorney or Party without Attorney:<br>Andrew Scott<br>2860 S. Circle Dr. #250K<br>Colorado Springs, CO 80906<br>(303) 495-3379      AndrewThomasScott@Gmail.com | Case Number:<br><br>**NOT YET FILED**<br><br>Division      Courtroom |
| **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** | |

COMES NOW, Plaintiff, Andrew Thomas Scott and files this Complaint for Declaratory and Injunctive Relief and hereby states as follows:

## I. PARTIES

1. Andrew Thomas Scott, Plaintiff, is a legal resident of El Paso County, CO with a permanent address of 2860 S. Circle Dr. #250K, Colorado Springs, CO 80906.

2. Defendant, The State of Colorado is a State with its capital in Denver, Colorado. The State of Colorado has enacted and enforces Colorado Revised Statute § 18-9-313.

## II. JURISDICTION AND VENUE

3. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

4. This case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and all of the events giving rise to this claim occurred in this District.

## III. PRELIMINARY STATEMENT

7.  The First Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, prohibits Congress and the States from "abridging the freedom of speech".

8.  The sole issue in this case is purely one of law - the constitutionality of Colorado Revised Statute § 18-9-313 (hereafter also referred to as "the statute"), which criminalizes publishing any of the following personal information about a law enforcement official, or other defined state and county employees:

    a.  home address;

    b.  home telephone number;

    c.  personal mobile telephone number;

    d.  pager number;

    e.  personal e-mail address;

    f.  personal photograph;

    g.  directions to their home;

    h.  photographs of their home; or

    i.  photographs of their vehicle;

9.  Plaintiff has had several opportunities to interact with a Colorado State Patrol Trooper Charles David Hiller (hereafter "Trooper Hiller"), an employee of the Defendant.

10. Those interactions consisted mainly of Plaintiff's attempt to serve Trooper Hiller a lawful subpoena from the Colorado Department of Revenue, and the retaliatory harassment Trooper Hiller has purported on Plaintiff since.

11. As a result of those interactions and observations about Trooper Hiller, Plaintiff has formed an opinion of Trooper Hiller that he is vindictive and unprofessional.

12. Plaintiff wishes to exercise his First Amendment right to press, to publish online a detailed, unredacted, and truthful report of his experience with Trooper Hiller. Plaintiff also wishes to exercise his right to free speech and expression to inform others of his opinion of Trooper Hiller. More specifically, Plaintiff wishes to include in his online public review a video of Plaintiff's solo attempt to serve legal

process on Trooper Hiller at his home. Under current Colorado law, publishing the video would be in violation of C.R.S. 18-9-313.

13. Trooper Hiller has emailed complaints to Colorado Licensed Attorney Joseph Maher, Colorado's Office of Private Investigator Licensure, the Process Server's Association of Colorado, among others, and included in at least some of those complaints a copy of C.R.S. 18-9-313.

14. Plaintiff feels harassed by Trooper Hiller's retaliation and reasonably fears arrest and prosecution under C.R.S. 18-9-313 if he publishes unredacted copies of his own account of events. The statute, therefore, chills Plaintiff's exercise of his rights under the First Amendment.

15. Plaintiff clearly has standing to bring this claim. It is not necessary that Plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge a statute that Plaintiff claims deters the exercise of his constitutional rights. However, Plaintiff demonstrates an actual and well-founded fear that the law will be enforced against him by Trooper Hiller's actions of sending copies of C.R.S. 18-9-313 during his campaign of writing complaints against Plaintiff.

16. Unless the statute is declared unconstitutional by this court, and its enforcement enjoined, Plaintiff will be subject to arrest and prosecution if he publishes an unredacted account of his events online. Plaintiff will continue to be irreparably harmed by this continued threat which results in the denial of his constitutional right.

## IV. CAUSE OF ACTION

17. C.R.S. 18-9-313 is unconstitutional on its face and as applied to Plaintiff, in violation of his rights under the First and Fourteenth Amendments to the U.S. Constitution. This violation may be redressed pursuant to 42 U.S.C. § 1983.

## V. THE INFRINGING STATUTE - C.R.S. 18-9-313

18. C.R.S.18-9-313.

Personal information on the internet - law enforcement official - victims of domestic violence, sexual assault, and stalking - protection for human services workers - definitions

(1) As used in this section:

    (a) "Human services worker" means:

(I) A state or county employee, or an attorney representing the state or county, who is engaged in investigating or taking legal action regarding allegations of child abuse or neglect pursuant to article 3 of title 19, and a state or county support staff person who has contact with the public relating to these allegations;

(II) A state or county employee, or an attorney representing the state or county, who is engaged in investigating or taking legal action regarding allegations of mistreatment of an at-risk adult pursuant to article 3.1 of title 26, and a state or county support staff person who has contact with the public relating to these allegations;

(III) A state or county employee, including a county attorney or an employee of a person under contract with a state or county, who is engaged in establishing, modifying, and enforcing child support orders pursuant to article 13 of title 26, and a state or county support staff person who has contact with the public relating to these duties;

(IV) A state or county employee, including a county attorney, who is engaged in determining eligibility for or investigating fraud in public programs established in article 2 of title 26, and who has contact with the public relating to these duties; or

(V) An employee of a juvenile detention facility established and operated pursuant to section 19-2-403 or an employee of the division of youth services within the department of human services, including an employee under contract with the division of youth services, who has contact with juveniles involved with youth services.

(b) "Immediate family" means a law enforcement official's or human services worker's spouse, child, or parent or any other blood relative who lives in the same residence as the law enforcement official or human services worker.

(c) "Law enforcement official" means a peace officer as described in section 16-2.5-101, a judge as defined by section 18-8-615 (3), or a prosecutor, as defined in section 18-8-616 (3).

(d) "Participant in the address confidentiality program" means an individual accepted into the address confidentiality program in accordance with part 21 of article 30 of title 24.

(e) "Personal information" means the home address, home telephone number, personal mobile telephone number, pager number, personal e-

mail address, or a personal photograph of a law enforcement official, participant in the address confidentiality program, or human services worker; directions to the home of a law enforcement official, participant in the address confidentiality program, or human services worker; or photographs of the home or vehicle of a law enforcement official, participant in the address confidentiality program, or human services worker.

(2) It is unlawful for a person to knowingly make available on the internet personal information about a law enforcement official or the official's immediate family member, if the dissemination of the personal information poses an imminent and serious threat to the law enforcement official's safety or the safety of the law enforcement official's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

(2.5) An address confidentiality program participant may submit a written request to a state or local government official and follow the process in section 24-30-2108, C.R.S., including the presentation of a valid address confidentiality program authorization card. If a state or local government official has received the above information, then the state or local government official shall not knowingly make available on the internet personal information about such participant in the address confidentiality program or the actual address, as defined in section 24-30-2103 (1), C.R.S., of such participant in the address confidentiality program.

(2.7) It is unlawful for a person to knowingly make available on the internet personal information about a human services worker or the human services worker's immediate family if the dissemination of personal information poses an imminent and serious threat to the human services worker's safety or the safety of the human services worker's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

(2.8)

> (a) A human services worker may submit a written request pursuant to subsection (2.8)(b) of this section to a state or local government official to remove personal information from records that are available on the internet. If a state or local government official receives such written request, then the state or local government official shall not knowingly make available on the internet personal information about the human services worker or the human services worker's immediate family.

(b) A human services worker's written request to a state or local government official to remove records that the official makes available on the internet must include:

(I) Evidence that the person submitting the request is a human services worker, as defined in subsection (1) of this section; and

(II) An affirmation stating under penalty of perjury that the person has reason to believe that the dissemination of the personal information contained in the records that the official makes available on the internet poses an imminent and serious threat to the human services worker's safety or the safety of the human services worker's immediate family.

(3) A violation of subsections (2) and (2.7) of this section is a class 1 misdemeanor.

## VI. ARGUMENTS FOR RELIEF

### The Statute Violates Plaintiff's Right to Press

19. Defendant may argue that the speech proscribed by C.R.S. 18-9-313, including the video Plaintiff wishes to publish, is not protected because it is not media publication of a matter of public significance, nor is it "core political speech". However, the issue of police accountability is certainly political and of legitimate public interest.

20. Plaintiff wholly argues that the publication of truthful personal information about police officers is of the utmost importance and is linked to the issue of police accountability through aiding in achieving service of process, researching criminal history of officers, organizing lawful pickets, and other peaceful and lawful forms of civic involvement that publicize the issue.

21. Further, Plaintiff as an individual is afforded no less rights than those afforded to the media, nor is the level of First Amendment scrutiny altered by the online medium sought to be used by Plaintiff. See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 784, 105 S.Ct. 2939 (1985); Reno v. ACLU, 521 U.S. 844, 870, 117 S.Ct. 2329 (1997).

### The Statute Does Not Proscribe True Threats or
### Any Other Proscribable Mode of Speech

22. A challenge to a statute on First Amendment grounds requires that the Court first consider whether the speech or conduct is protected. There are few categories of speech that are not protected by the First Amendment. As example, the First

Amendment does not protect certain modes of speech or expression, including true threats, fighting words, incitements to imminent lawless action, and classes of lewd and obscene speech.

23. However, Plaintiff argues that publishing an officer's address and phone number, even if with intent to intimidate, is not per se a "true threat" as defined in constitutional law jurisprudence. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 1548 (2003). Intimidation, in the constitutionally proscribable sense of the word, is a type of true threat, where the speaker directs a threat to a person with the intent of placing the victim in fear of bodily harm or death. Simply publishing an officer's phone number, address, inter alia, is not in itself a threat or serious expression of an intent to commit an unlawful act of violence.

24. The speech prohibited by C.R.S. 18-9-313 — e.g. addresses and telephone numbers of police officers — are also not "fighting words" or incitements to imminent lawless action. Thus, on its face, C.R.S. 18-9-313 does not purport to regulate constitutionally proscribable speech.

25. Individuals can freely acquire the personal identifying information that C.R.S. 18-9-313 criminalizes from a myriad of public and private sources, including government entities like county offices that hold property records and for-profit online commercial websites, e.g. spokeo.com or intelius.com, among hundreds of others. Photos and directions to law enforcement official's homes can be found on Google Maps. The phone book and other online and offline phone directories list home telephone numbers and addresses for law enforcement officials. Photographs of law enforcement officials are taken and published online every day.

26. Defendant will not be able to cite any authority for the proposition that truthful, lawfully-obtained, publicly-available personal identifying information constitutes any mode of constitutionally proscribable speech. Instead, Plaintiff's ability to disclose and publish information obtained elsewhere is precisely the kind of speech that the First Amendment protects. Sheehan, 272 F. Supp. at 1142, citing Bartnicki v. Vopper, 532 U.S. 514, 527, 121 S.Ct. 1753 (2001).

**The Statute is an Invalid Content-Based Restriction on Free Speech**

27. A content-based statute is presumptively invalid, the First Amendment precludes the government from proscribing speech because it disapproves of the ideas expressed. R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992). A statute is content-based when it prohibits otherwise permitted speech based solely on the subject(s) addressed by the speech. Id. at 381, 112 S. Ct. 2538.

28. When an individual enforcing a statute must examine the content of the speech to determine whether the statute governs, the statute is content-based. S.O.C. Inc. v. County of Clark, 152 F.3d 1136, 1145 (9th Cir.1998), Foti, 146 F.3d at 635-36.

29. A statute is content-neutral if it is justified without reference to the content of the regulated speech.

30. Here, on its face, the statute is content-based. The statute prohibits speech based solely on the content addressed by that speech – if the content is related to "personal information" of a law enforcement official, or other named state or county employee.

31. Government regulation of expressive activity is only content-neutral so long as it is justified without reference to the content of the regulated speech. C.R.S. 18-9-313 is clearly content-based, as it restricts speech based on its subject.

32. To enforce the statute, the prosecuting attorney must determine whether the "personal information" revealed is, as example, that of a law enforcement official. This requires the examination of content.

33. The statute's "if the dissemination of the personal information poses an imminent and serious threat to the law enforcement official's safety" provision does nothing to alleviate its content-based nature.

### The Statute Punishes Publication of Publicly Available Information And Serves No State Interest of the Highest Order

34. A content-based restriction on free speech is only constitutional if it is narrowly tailored to serve a compelling state interest. Instead, the statute is overly broad and the government can assert no compelling interest in suppressing the speech proscribed by C.R.S. 18-9-313.

35. C.R.S. 18-9-313 is overly broad, punishing the publication of "personal information" of any of the following 19 categories of persons:

    a. a peace officer as described in section 16-2.5-101;

    b. a judge as defined by section 18-8-615 (3);

    c. a prosecutor as defined in section 18-8-616 (3);

    d. a state or county employee who is engaged in investigating child abuse or neglect;

e.  an attorney representing the state or county regarding allegations of child abuse or neglect;

f.  a state or county support staff person who has contact with the public relating to allegations of child abuse or neglect;

g.  a state or county employee who is engaged in investigating at-risk adults;

h.  an attorney representing the state or county regarding allegations of at-risk adults;

i.  a state or county support staff person who has contact with the public relating to allegations of at-risk adults;

j.  a state or county employee who is engaged in establishing, modifying, and enforcing child support orders;

k.  an attorney representing the state or county regarding establishing, modifying, and enforcing child support orders;

l.  a state or county support staff person who has contact with the public relating to establishing, modifying, and enforcing child support orders;

m.  a state or county employee who is engaged in determining eligibility for or investigating fraud in public programs;

n.  an attorney representing the state or county regarding eligibility for or investigating fraud in public programs;

o.  a state or county support staff person who has contact with the public relating to eligibility for or investigating fraud in public programs;

p.  an employee of a juvenile detention facility;

q.  an employee of youth services within the department of human services;

r.  employees under contract with the division of youth services who has contact with juveniles involved with youth services; OR

s.  any of the above person's spouse, child, parent, or blood relative who lives in the same residence.

36. A compelling state interest is one that is crucial and necessary.

37. An example of our governments "compelling interests" includes respect of the U.S. Constitution and for the fundamental civil rights it protects. Protecting the

privacy of the defined 19 classes of professions may be important, but it is not crucial or necessary, and it is therefore not a compelling government interest.

38. Defendant will allege its compelling state interest is in protecting human services workers and law enforcement officials from harm and intimidation. However, when the government itself injects personal identifying information into the public domain - e.g. through it's own online county-run government websites which index property and taxes, it cannot credibly take the contradictory position that one who compiles and communicates that information offends a compelling state interest.

39. The statute states that the personal information cannot be published online "if the dissemination of the personal information poses an imminent and serious threat", however this implies that the imminent and serious threat is coming from the dissemination of the personal information and therefore any time that "personal information" is "disseminated", it could "pose an imminent and serious threat". The subjective interpretation of this provision dangerously opens this law up for discriminatory enforcement.

40. C.R.S. 18-9-313 states it is unlawful for a person to knowingly "make available on the internet" but does not prohibit publication of the personal information by any other means – which raises serious doubts about the interests claimed by the State. If the State of Colorado was truly committed to the extraordinary measure of punishing truthful publication in the name of privacy, it would apply it to all media and not just media posted on the internet.

41. Punishing Plaintiff for dissemination of information which is already publicly available is relatively unlikely to advance the interests claimed by the State.

42. States must not be allowed to punish publication of lawfully obtained truthful information about a matter of public significance.

43. State action to punish the publication of truthful information seldom can satisfy constitutional standards. While the state's interest of protecting its employees from harm may be important, it is not compelling.

44. C.R.S. 18-9-313 is overly broad and proscribes protected speech without being narrowly tailored to serve a compelling government interest and is therefore unconstitutional and invalid.

## The Statute is Void for Being Vague, Highly Subjective, and Inviting Discriminatory Enforcement

45. Plaintiff also challenges the facial validity of the statute on grounds that it is unconstitutionally vague. A statute is unconstitutionally vague if persons of common intelligence must necessarily guess at the statute's meaning.

46. The statutes "if the dissemination of the personal information poses an imminent and serious threat" provision is so vague and without any supporting definition, that it leads any person accused of violating this statute to be subjected to prosecution and arrest at the highly subjective opinion of a prosecuting attorney.

47. The vagueness of this statute dangerously invites discriminatory enforcement.

48. The vagueness of the statutory language raises special First Amendment concerns because of the "obvious chilling effect" on free speech. Reno, 521 U.S. at 865, 871-72, 117 S. Ct. 2329 (finding terms "indecent" and "patently offensive" unconstitutionally vague).

**The Statute is Not Readily Susceptible to a Narrowing Construction**

49. The Court should not facially invalidate a statute for overbreadth unless the statute is not "readily subject to a narrowing construction by the state courts and its deterrent effect on legitimate expression is both real and substantial." Erznoznik, 422 U.S. at 216, 95 S. Ct. 2268, see also Broadrick, 413 U.S. at 613, 93 S. Ct. 2908 (1973). However, the Court may only impose a limiting construction to rescue a statute from facial challenge if the statute is readily susceptible to that construction, the Court may not rewrite a statute or insert missing terms to conform it to constitutional standards. Reno v. Am. Civil Liberties Union, 521 U.S. 844, 884-85, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997), Foti, 146 F.3d at 639. The Court may look to the statute's plain language or other sources of legislative intent to determine if a statute is readily susceptible to a limiting construction. Reno, 521 U.S. at 884, 117 S. Ct. 2329. Of course, the Court may not adopt an interpretation of a statute precluded by its plain language. S.O.C., Inc., 152 F.3d at 1143-44

50. Plaintiff argues that the statute cannot be narrowly construed because the statute is fundamentally flawed, substantially overbroad, and, regardless of any language changes, still aims to proscribe constitutionally protected speech.

**Courts Have A Long Standing of Finding This Statute Unconstitutional in Other States**

51. Eight other states have passed similar laws to C.R.S. 18-9-313, including California, Nevada, Utah, Idaho, Texas, Florida, Washington and New Jersey.

   a. Florida's Law was found to be unconstitutional in the United States District Court Northern District of Florida case 4:09-cv-373, Robert Brayshaw vs City of Tallahassee.

b. California's Law was found to be unconstitutional in the United States District Court for the Eastern District of California case 1:16-cv-1152, Doe Publius et al v Diane F. Boyer-Vine.

c. Washington's law was found to be unconstitutional in the United States District Court for the Western District of Washington case 2:02-cv-01112, William Sheehan v. Christine Gregoire et al.

d. Plaintiff cannot find record that the laws of the other states have yet been challenged.

### We Live in a Democratic Society

52. Plaintiff does not intend to minimize the real fear of harm and intimidation that law enforcement officials, and their families, may experience. Plaintiff recognizes, law enforcement officials are common targets of threats and harassment. However, we live in a democratic society founded on fundamental constitutional principles. In this society, we do not quash fear by increasing government power, proscribing those constitutional principles, and silencing those speakers of whom the majority disapproves. Rather, the First Amendment demands that we confront those speakers with superior ideas.

53. In Terminello v Chicago (1949), the Court ruled that by permitting conviction for speech that "stirred people to anger, invited public dispute, or brought about a condition of unrest," the law "seriously invaded" the protection of speech afforded by the First Amendment. "A function of free speech," Chief Justice Douglas wrote, "under our system of government is to invite dispute." Speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."

54. C.R.S. 18-9-313 puts our most precious freedoms at risk, which puts our free society in jeopardy. The State of Colorado must not be allowed to operate beyond the limits of our Constitution.

### VII. CONCLUSION

55. The statute is substantially overbroad. Its deterrent effect on constitutionally protected speech is real and substantial. It does not regulate true threats or any other proscribable mode of speech. The statute punishes the communication of truthful lawfully-obtained, publicly-available information. The statute is content-based and it does not serve a compelling state interest or state interest of the highest order. Because the statute, on its face, does not purport to proscribe true threats, it is unclear what speech, within the statute's scope, Defendant has the power to constitutionally proscribe. Further, the statute is not readily susceptible to any narrowing construction consistent with First Amendment standards.

Finally, the statute is void for vagueness, being highly subjective, and for inviting discriminatory enforcement. Accordingly, Colorado Revised Statute 18-9-313 is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution. The statute is invalid and unenforceable.

56. Plaintiff has no adequate remedy at law because the denial of Plaintiff's constitutional rights cannot be remedied through legal relief. As such, Plaintiff seeks only declaratory and injunctive relief and does not seek damages.

## VII. DECLATORY AND INJUNCTIVE RELIEF SOUGHT

57. WHEREFORE, Plaintiff respectfully requests this honorable Court to:

    a. Declare that C.R.S. 18-9-313 is invalid as unconstitutional under the First and Fourteenth Amendments.

    b. Enter a permeant injunction against Defendant and its agents, subordinates, and employees from enforcement of C.R.S. 18-9-313.

    c. Award Plaintiff his costs, litigation expenses and attorney's fees pursuant to 42 U.S.C. § 1988; and

    d. Grant Plaintiff such other and further relief as may, in the discretion of this Court, be just and proper.

Respectfully submitted this 22nd day of April 2021.

Andrew Scott
2860 S. Circle Dr. #250K
Colorado Springs, CO 80906

Page 13 of 13